
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2017

**STATE OF TENNESSEE v. TEDDY REECE RAGAN**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2013-D-3065      Monte D. Watkins, Judge**

_____

**No. M2015-02316-CCA-R3-CD**
_____

A Davidson County jury convicted the Defendant, Teddy Reece Ragan, of sexual exploitation of a minor, and the trial court sentenced him to a ten-year sentence to be served at 100% in the Tennessee Department of Correction. On appeal, the Defendant contends that the evidence is insufficient to support his conviction, that the trial court improperly admitted the Defendant's prior conviction for violation of the sex offender registry, and that the trial court erred by failing to charge the jury with attempted sexual exploitation of a minor. After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J. and ROBERT L. HOLLOWAY, J., joined.

Elaine A. Heard (at trial) and David Harris (on appeal), Nashville, Tennessee, for the appellant, Teddy Reece Ragan.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; Roger Moore, Deputy District Attorney General; and Alyissa C. Henning, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Trial**

This case arises from the Defendant's possession of child pornography found on his computer. Based on this conduct, a Davidson County grand jury indicted the

Defendant for two counts of sexual exploitation of a minor, where the number of images possessed exceeds one hundred.[1]  The following evidence was presented at the Defendant's trial: Maria Sexton testified that she worked on the Sex Offender Registry Unit at the Metropolitan Nashville Police Department and that she came in contact with the Defendant when she went to his residence to speak with his roommate, Howard Pardee.  While she was meeting with the Defendant's roommate, Detective Sexton asked the Defendant if he had a computer and if there was child pornography on it.   The Defendant replied that he "mostly look[ed] at adult pornography" and that it was "hard to say" whether he had any child pornography on his computer.   Based on this conversation, Detective Sexton contacted the Internet Crimes Against Children Task Force ("ICAC Unit").   On cross-examination, Detective Sexton agreed that the Defendant's roommate was a sex offender.

Michael Adkins testified that he worked for the ICAC Unit dealing with all sexual exploitation of a minor cases in Davidson County.  Officer Adkins responded to the Defendant's residence after receiving a report from Detective Sexton.  Officer Adkins had a conversation with the Defendant, which was recorded, after Officer Adkins read the Defendant his *Miranda* rights.  The recorded interview was played aloud for the jury.  In it, the Defendant stated that, when he looked at pornography, there was "likely" to be minors mixed in with adult pornography.  Officer Adkins questioned the Defendant about whether he was "searching" on the internet for child pornography.  The Defendant listed the websites he used to look at pornography on the internet and stated that the "categories" he chose on the websites were "lesbians, threesomes, gang bang," and "straight sex."  The Defendant stated that he bought the computer six months prior from a pawn shop for two hundred dollars.  The Defendant was unsure whether the computer was protected by a password.  The Defendant said that his internet search history contained searches for "Lolita."  Officer Adkins explained that this word is "strictly used for child pornography." The Defendant denied knowing that child pornography was linked with this search term. The Defendant agreed that some of the girls in the pornography he viewed did not appear to be eighteen years old.  He also agreed that some of the videos and images saved on his computer had girls in them that looked underage.  The Defendant stated that he downloaded the images and videos from "all over" the internet.  He denied sharing the videos with others on the internet.  The Defendant agreed that "a bunch" of the images were saved in his "favorite" folder on his computer.  The Defendant said that he knew there were images on the computer of girls under the age of eighteen.  He stated that "some" of the images were already on the computer when he bought it, but he also stated that he had looked at the "teens" sections of pornography websites.  The Defendant stated that, other than himself, his roommate "Howard" was the only other person who had used

---

[1]  Before this trial, the State entered a nolle prosequi on one of the counts.

the computer; he denied that his other roommate, Kenneth Mills, ever used the computer. Following the interview, Officer Adkins seized the Defendant's laptop computer and executed a search warrant on it.

On cross-examination, Officer Adkins stated that it seemed clear to him during the interview that the Defendant was describing searching for adult and child pornography on the internet.

Chad Gish testified that he worked on the Surveillance Investigative Support Unit at the Metropolitan Nashville Police Department extracting evidence from digital devices. Detective Gish said he performed an extraction on the Defendant's computer and found child pornography videos and images. He also identified the Defendant's internet search history saved on the computer which consisted of several "immediately recognizable" child pornography search terms, including a search for child pornography on the day the Defendant's computer was seized. Detective Gish found approximately two hundred child pornography images on the Defendant's computer and approximately fifty videos. A sampling of the images and videos was shown to the jury. Detective Gish testified that he found adult pornography on the Defendant's computer as well and a representative sample of those images were shown to the jury.

The State closed its proof. The Defendant testified that he was sixty-nine years old and that the images shown at trial were not his. He stated that he did not own a computer and that three other people were staying in the house with him. He then stated that "the images that's on my computer came" from Kenneth Mills's phone. He stated that Mr. Mills looked at the images while the Defendant was in the hospital having an operation and that Mr. Mills had turned the Defendant into the District Attorney and tried to "railroad" him. The Defendant stated that he and his roommate, also being prosecuted for possessing child pornography, were paying the price for what Mr. Mills had done. The Defendant stated that he did look at adult pornography but stated that he did not "go out of [his] way to look at child porn[ography]."

At this point, a jury-out hearing was held on the Defendant's prior criminal record. The State questioned the Defendant about his conviction for violating the sex offender registry by providing false information, and the trial court found that, pursuant to Tennessee Rule of Evidence 609, the conviction was admissible because it went to the matter of the Defendant's credibility.

With the jury present, on cross-examination, the Defendant denied that he owned a computer and stated that the reason he told the detective otherwise was because "half the time [the computer] was usually sitting close to [his] room or even in [his] room . . . ." He denied telling the detective that he bought the computer from a pawn shop for two hundred

dollars and stated that his roommate purchased the computer. The Defendant agreed that he had seen Mr. Mills looking at child pornography on his computer but stated that he let Mr. Mills continue to live with him and his roommate because they had no choice financially. He agreed that neither man reported Mr. Mills's activity to the police. The Defendant denied looking at or enjoying child pornography. He agreed that he was convicted in 2011 of violating the sex offender registry for false or incomplete information.

Based upon this evidence, the jury convicted the Defendant of sexual exploitation of a minor.

## B. Sentencing Hearing

At the sentencing hearing on this matter, the trial court admitted the presentence report as evidence. The trial court heard arguments and then made the following statement:

> First, the Court as a sentencing consideration needs to look at [T.C.A. § 40-35-103(b)]. The reason for that is that child pornography is something that is hurting a number of people, particularly the children who are the subjects of child pornography; and, then, the individuals who view that, they, essentially, promote the greater use of child pornography. So, I think that confinement is necessary in this particular case.

> With regard to enhancement factors and mitigating factors: I was looking at mitigating factor number six. And I, really, don't see that because of [the Defendant's] age he lacked substantial judgment in committing the offense; particularly, based on upon his prior history. He knew better. He knew that he was a registered sex offender and he should not be involved in anything . . . of a sexual nature . . . unless it's essentially a consensual relationship. Viewing child pornography is not something that a person should be engaged in. And I believe [the Defendant] full well knew this.

> With regard to [mitigating] factor number eight, regarding his mental condition: I did not receive any evidence that demonstrated that he lacked any kind of mental capacity, and, therefore, his culpability was reduced in any way. [The Defendant] even testified in his own defense and was fully aware of what he was doing, as well as the statements that he made to the officers . . . right before he was arrested.

> Now with regard to [mitigating] factor number one: "That his

4

criminal conduct neither caused nor threatened serious bodily injury." Well, it may not have done that, but I am not so sure that this is a factor that should be considered in this type of case. However, I will give [the Defendant] the benefit of the doubt and will allow that one particular factor.

Now, with regard to enhancement factors: It is obvious, based upon his presentence report, [the Defendant] has a prior criminal history, so, that enhancement factor [§ 40-35-114(1)] applies; also, that [the Defendant] was under supervision in the community, so that enhancement factor [[§ 40-35-114(13)] applies. . . . I believe the proper sentence would be ten years.

It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant asserts that the evidence is insufficient to sustain his conviction, that the trial court improperly admitted the Defendant's prior conviction for violation of the sex offender registry, and that the trial court erred by failing to charge the jury with attempted sexual exploitation of a minor.

### A. Sufficiency of the Evidence

The Defendant asserts that the State did not offer proof that the Defendant was the owner or possessor of the computer, and furthermore, the State did not prove that he knowingly possessed the child pornography images, as required by section 39-17-1003. The State counters that the jury by its verdict rejected the Defendant's testimony that he did not own the computer. The State further contends that the Defendant, by his own testimony, established that he was aware that child pornography was being viewed on the computer, which is sufficient to find that he knowingly possessed it as contemplated by the statute.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly

interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)).

In this case, the Defendant was convicted of sexual exploitation of a minor. A conviction for sexual exploitation of a minor requires the State to prove that the Defendant "knowingly possess[ed] material that include[d] a minor engaged in . . . [s]exual activity; or . . . [s]imulated sexual activity that is patently offensive." T.C.A. § 39-17-1003(a) (2014).

The evidence, considered in the light most favorable to the State, shows that the Defendant had a laptop in his residence that contained several hundred images of child pornography and approximately fifty videos depicting child pornography. When asked

by the police whether he looked at child pornography, the Defendant initially was evasive in his answer, and later, in a recorded interview, the Defendant told Officer Adkins that his computer contained child pornography images. The Defendant told investigators that he had bought the computer himself. This evidence is sufficient from which a jury could have concluded, beyond a reasonable doubt, that the Defendant knowingly possessed child pornography. Accordingly, we conclude that the evidence is sufficient to support the conviction and as such, the Defendant is not entitled to relief on this issue.

## B. Prior Conviction for Violation of the Sex Offender Registry

The Defendant contends that the trial court erred when it ruled that the Defendant's prior conviction for violation of the sex offender registry for giving false or incomplete information would be admissible at trial. The Defendant argues that, while the conviction may have been admissible pursuant to Tennessee Rule of Evidence 609, the probative value was "substantially outweighed" by the unfair prejudice because it informed the jury that the Defendant was a sex offender, giving the jury the impression that he was a "sexual deviant, and therefore likely to have committed the instant offense." The State responds that the trial court properly admitted the conviction and limited the scope of the State's cross-examination of the Defendant to impeachment with regards to the conviction. We agree with the State.

Rule 609 of the Tennessee Rules of Evidence permits the State to attack the credibility of a criminal defendant by presenting evidence of prior convictions if four conditions are satisfied. *See* Tenn. R. Evid. 609. First, the prior conviction must be punishable by death or imprisonment over one year or must have involved a crime of dishonesty or false statement. *See* Tenn. R. Evid. 609(a)(2). In addition, less than ten years must have elapsed between the defendant's release from confinement for the prior conviction and the commencement of the subject prosecution. *See* Tenn. R. Evid. 609(b). The State must give reasonable pre-trial written notice of the impeaching conviction, and, finally, the trial court must find that the impeaching conviction's probative value on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. *See* Tenn. R. Evid. 609(a)(3).

This Court reviews the trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. *See State v. Mixon*, 983 S.W.2d 661, 675 (Tenn. 1999); *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). A trial court abuses its discretion only when it "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)). If a trial court fails to comply with the procedural requirements of Rule 609, then the trial court's decision is

not entitled to deference. *State v. Lankford*, 298 S.W.3d 176, 182 (Tenn. Crim. App. 2008).

Trial courts should engage in a two-prong analysis when determining if the probative value of the impeaching conviction is outweighed by its prejudicial effect. *Id.* Trial courts are required to expressly (1) "analyze the relevance the impeaching conviction has to the issue of credibility," as well as (2) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." *Id.* (citations omitted). The mere fact that a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness. *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citations omitted). However, "[w]hen an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that, since the defendant committed a similar offense, he or she is probably guilty of the offense charged." *Mixon*, 983 S.W.2d at 674 (citations omitted).

A trial court should first determine whether the impeaching conviction is relevant to the issue of credibility. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). Tennessee Rule of Evidence 609 suggests that the commission of any felony is "generally probative" of a defendant's credibility. *Id.* The Tennessee Supreme Court, however, has rejected a per se rule that permits impeachment by any and all felony convictions. *Mixon*, 983 S.W.2d 661 at 674. A prior felony conviction still must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issues of the case. *Waller*, 118 S.W.3d at 371. To determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or a false statement. *Id.*

In this case, outside the presence of the jury, the State questioned the Defendant about his prior convictions for indecency with a child and violation of the sex offender registry by giving false or incomplete information. The Defendant objected to the admissibility of the convictions. The trial court stated that the violation of the sex offender registry conviction was admissible, pursuant to Rule 609, due to the fact that the date of confinement fell within the ten-year period contemplated by the rule and that the conviction was probative of the Defendant's credibility. The trial court further stated that it would be highly prejudicial to inquire about the indecency with a child conviction in front of the jury but deferred ruling on its admissibility pending the Defendant's testimony with regard to the sex offender registry violation. The State indicated that unless the Defendant "open[ed] the door," it would not question him about the indecency

8

with a child conviction. In the presence of the jury, the Defendant testified that he was convicted of violation of the sex offender registry in 2011 for providing false or incomplete information.

The record demonstrates that the trial court followed the procedural requirements for considering the admissibility of impeachment evidence. The prior conviction was probative of credibility, due to the fact that the Defendant provided false or incomplete information, and the Defendant admitted as much in his testimony. The trial court properly weighed the probative value against the risk of prejudice and ultimately, the Defendant's conviction for indecency with a child was excluded. Accordingly, we conclude that the trial court did not abuse its discretion when it concluded that the Defendant could be questioned about his prior conviction for violation of the sex offender registry when he testified at trial. The Defendant is not entitled to relief as to this issue.

## C. Jury Instruction

The Defendant lastly contends that the trial court erred when it failed to instruct the jury on the lesser-included offense of attempted sexual exploitation of a minor. The Defendant argues that a "reasonable survey of the facts indicates that if [the Defendant] denied knowingly possessing the images but acknowledged having access to the computer, that he could have had the necessary intent to knowingly possess [the images], but never actually knowingly possessed [them] due to the public nature of the computer between the three individuals living there." The State responds that the Defendant failed to request this instruction at trial and thus, he is limited to relief under the plain error doctrine. It further argues that the attempt instruction was not appropriate because there was no proof that the Defendant attempted to possess the images but did not actually do so. We agree with the State.

Relief is not required when "a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). As such, the issue is waived, and it may only be considered for plain error. *See* Tenn. R. Crim. P. 52(a). Tennessee Rule of Appellate Procedure 36(b) states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for new trial or assigned as error on appeal." Accordingly, this Court will grant "plain error" review pursuant to Rule 36(b) only where the following five criteria are met: (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error

was so significant that it "'probably changed the outcome of the trial.'" *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id.* at 283. The party claiming plain error has the burden of persuading the appellate court. *State v. Banks*, 271 S.W.3d 90, 119 (Tenn. 2008).

At trial, the Defendant's attorney asked the trial court if it was going to charge the jury with attempted sexual exploitation of a minor and the trial court replied that it would not, although it would allow the Defendant to request the instruction. The Defendant stated that it was in the trial court's discretion whether or not to issue this charge and made no further argument. The Defendant raised the issue in his motion for new trial, however, no transcript of the motion for a new trial hearing is included in the record before us, and the trial court's order denying the motion does not contain a summary of the evidence presented at the hearing or its reasons for denying the motion. As such, we conclude that the Defendant has not met his burden of establishing what occurred at the trial level with regard to this issue. Thus, we decline to review the Defendant's issue under the plain error doctrine. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE